Good morning to all of you. My name is Dale Gallipo, and I'm representing the appellants in this case. I think at the heart of the case, from our position, 102 seconds of tasing killed the decedent. And the medical examiner found the tasing to be a cause of death and characterized the manner of death as homicide. Given that the person who maybe could dispute some of the facts is dead, we're hoping that your honors will scrutinize some of the facts, given that normally on summary judgment you assume the non-moving party's facts and take reasonable inferences from them. Mr. Jones was initially stopped, allegedly, for not having his lights on, although there's a disagreement. I don't even get to this. The district court's argument is that you don't have standing. All right. I will address that. That's not true. That's jurisdictional. That is correct. I agree with you. But I think the reason that I mention that is for two reasons. One, under the 14th Amendment, we believe the standing argument that the district court has issue with, and I understand their issue, deals with the Fourth Amendment claim because that's the survival claim. The 14th Amendment claim does not need that specific appointment. This is the claim for loss of a child. Interference with familiar relationship. Right. We believe that the district court. How old was Mr. Jones? He was 44. Okay. And there are at least some circuits that have suggested that after the age of maturity, that this claim is no longer viable. There are some circuits, but not the Ninth Circuit. So the Ninth Circuit, in some of the cases, and there's many more, Smith v. City of Fontana, Johnson v. Bart, Curnow v. Ridgecrest, and many others, hold that adult children, even when an adult children is killed, the parents have a right for a 14th Amendment claim. And if we get past that, then what my standard is that you have to show that the officer's use of force shocked the conscience. In other words, the officers did not, they had a purpose to harm, that they intended to harm, terrorize, or kill. Well, that's under our law. Yes. Or we also pause court. Correct. What evidence do I have of that? Well, I'd like to address that if I can. It is true that the Porter v. Osborne case says in a 14th Amendment, you have this shock the conscience standard. And it goes on further under Porter to say they intended to harm,  I think the case then tries to differentiate situations where the officers have some time to deliberate, as opposed to situations where they do not. Obviously, if an officer has to make a split-second decision, they see someone with what they think to be a gun in their hand. Well, doesn't the evidence show here that the officers were continually attempting to place the defendant in custody, the decedent? A legitimate law enforcement objective, and they didn't do anything without having that be their intent? Is there anything in here that says there's any intent in this situation except attempting to place the decedent in custody? Well, I would argue it twofold. One, I would say at a minimum there's a factual dispute if the officers had time to deliberate as they're continuing to tase. I can understand an argument, Your Honor, with perhaps the first tase. But once the decedent is down, pinned against a tree, with his arms underneath him, eventually four officers securing him to continue tasing him, the one officer for 92 seconds. As you, I'm sure, are aware, in order to get anything over five seconds, you have to keep the trigger pressed. And some of those tases are 13 seconds and 19 seconds, and then we have the simultaneous. So at that point, during that last part of the tase, in which led to his death, we would argue, number one, that the officers acted with deliberate indifference. And that standard applies. And it might be a factual question for a jury if they had time to deliberate. Well, it's not a factual question because the judge has, first of all, got to give them the law. And I guess I'm still trying to figure out why our case, Porter v. Osborne, makes it such that they would give them any indifference standard because they would be talking about whether the officers intended to do something. Well, I think the preliminary question would be whether the officers had time to deliberate. If they did, then the case says that the deliberate indifference applies. If they did not, then the case, as you previously stated, says there has to be a purpose to harm unrelated to a legitimate law enforcement objective. Quite frankly, I'm not sure anyone really knows what that means. And how we ever got there is probably a discussion for another day. Clearly, officers were acting within the course of their work as police officers. There's no suggestion that they were sexually assaulting someone in the back of a car. But I think if something violates the Constitution, even the Fourth Amendment excessive force, I think an argument could be made that that's not really related to a legitimate law enforcement objective. And although I would agree officers have a right to defend themselves, I think when you have a situation where they're trained that repeated and prolonged TASER applications can cause someone's death, that was their admitted training on that point. So we're talking about the facts under the circumstances, but there's no evidence of ulterior motives. There's no evidence of anything except you're suggesting that they had time to think about it. I realize what the time period was between the first time he was approached and they tried to arrest him until then. I realize about that time period. And you're saying that time period enough is enough for a question of fact. I do. But beyond that, I would say once he's prone with his arms underneath him, particularly when the other officers arrive, and he has weight on his back. But the problem is with all of that argument is the arms underneath him is the same thing we had from the first. The arms underneath him are going for underneath or doing whatever he did. In each instance, the officers believed that that had to do with a firearm. I understand that argument, Your Honor, but I think— That's not an argument. It's what they're suggesting. It's what they're saying. Yes, I agree with you. And I have no facts against it. Well, the problem is you don't have any verbal threat by the deceited. You don't have any punch, any kick, any standing up. All you have is him down on the ground. He says at some point on the taser video, stop tasing me and I can't move. And obviously a reasonable interpretation, the reason he couldn't get his arms out from underneath him is because, number one, he's being tased for 102 seconds, and you can't do it while that's happening. And number two, he's got weight on his back, and he's pinned against a tree. So really the alleged resistance, if you think about it, after the initial going to the ground is him essentially being immobilized by this taser. So can I get back to the standing issue? Because I realize it's a big deal. I'm sorry. I got departed, but I just wanted to point out that it doesn't apply to the 14th Amendment claim, and I think it was pointed out, well, that might be a different standard. In this case, and it's obviously high practice, primarily in California, and obviously in California the successor in interest or the representative of the estate can bring a survival action. Well, we all know it's different in Nevada. You need to have actually the name of the administrator appointed and then named as a plaintiff. Unfortunately in this case, and I'm not sure why this happened, at some point the father was appointed as the administrator, and then there was a motion with the court to file an amended complaint to list the estate as a plaintiff. There was a stipulation from defense counsel. The court granted the motion. Quite frankly, I think that may have given us a false understanding that we had it right. Here's the court granting a motion to allow us to amend it. I want to make sure I understand from your perspective what's required by that procedure. So Jones's father petitioned the probate court for the appointment. Is that correct? That is correct. And then the probate court issued an order granting the appointment. Yes. And that doesn't appoint him. That's not sufficient. He has to then file the order in where? Yes. What's the step that you missed? I believe the step we missed is filing the order in the probate court, and that was done eventually. Not only the order, but the petition. Right. That was done eventually, but it wasn't done in April. But it was done and included as part of our MSJ opposition. So you did it. You filed it in November, I think. Is that right? Yes. The petition is filed in April. The order is granted. That's correct. That's a special administrator. And then you failed to file it in probate court. It was filed eventually in probate court, but not when it should have been. It should have been filed immediately in April. Absolutely. And it didn't get filed until six months later. That's approximately correct. And there's no question in looking back at this, we should have done something differently. But we think if you look at the Moreland case, for example, this case is a little different because you had John Jones as a plaintiff. He had an amended complaint with the estate. He was eventually appointed, and the court was on notice of that. Now, obviously, if I had to do it again, at a minimum I would have moved for 17A relief, while the summary judgment motion was even pending. But we didn't do that, and we waited until after the ruling, and then we moved for relief. But the court never gave us a response. And then the time came to file an appeal, and then the court didn't have jurisdiction, so here we are. I think a case of 17A would be accurate to say that at the time of filing the amended complaint, which we have in front of us, that the petitioner was not authorized to file the complaint. That's a great question. I don't know. I'm not an expert. The reason I ask the question is standing is determined at the time the complaint is filed. I agree, Your Honor. So then I looked when was the first amended complaint filed, and then I looked when he would have had any right to have standing, and it was after. I think technically you're probably correct, because I think at the time that it was filed, we assumed that he did have the standing, because that last step wasn't taken. I guess the point I'm trying to make, and I understand your concerns and the issues of my colleague who's opposing us, this is a death case. And so it seems to me since John Jones was the plaintiff, was appointed at some point, the court was aware of this, it's an easy fix to at least get that worked out. We would hate to think that this whole case is going to be decided on that issue. Well, it isn't all cases, you've already said. It's only the fourth amendment claim. Right, and a few other things. With qualified immunity, we feel, given the officer's training that they talked about, given the Brian V. Juneau that year, and then in November, the law was enough clearly established in conjunction with their own knowledge and training that repeated TASU applications could cause death. Let me ask you another question. If I try to get by that, it seems to me that the termination of the proper party to sue is not difficult. I understood. I understood. Well, that's why I'm just addressing money. If it's not difficult, then I can't do anything about it. If it's understandable, I don't even know how I can say it's understandable. Well, what do they say? Hindsight is 20-20. I think at the time it was understandable for the following reasons. There was a, obviously, we got him appointed, so there was some understanding that he needed to be appointed. We filed this amended complaint that the judge signed off on and agreed to name the estate, so I think it's pretty obvious we thought at that point that's all we needed to do. Obviously, if we thought we needed to name him not just as a plaintiff, the father, but as special administrator, we would have done that. So I think in that context it's understandable. It certainly was a mistake, and I think it's one that under the morality of 17A that could be cured and should be. We believe, for purposes of this case, can I say a word about the state law claims? Yes. We believe there's clearly no immunity for the state law claims for two reasons. One, because the cases say that if there's any evidence, and remember this is just the summary judgment stage of a constitutional violation, this discretionary immunity under Nevada law does not apply. If there's any evidence, whether it's Fourth Amendment violation or 14th, we believe taking all the facts in our favor there is. And the second flaw, and I think it's Berkovitz, the Gauber test, the second flaw is not met. And there's cases, I believe, we cited in that regards. If I read Nevada law correctly, it says in the Gonzalez v. Las Vegas Metro Police Department, the decision whether to arrest or detain relates to policy objectives and thus is protected under Nevada's discretionary immunity state law. So it seems to me that at least for the claims as relating to arrest or detain, they meet the standard. It is possible with the detention. I guess the only one where I see where you might have an interest is in battery because there is a case directly about battery that has nothing to do with the policy objectives. That's correct, Your Honor. So it looks like I'm quickly running out of time here. I think you're over your time. Yes. I'll make one more comment. We didn't do what we should have done to get it right, but I think if you look at the overall record, that he was appointed and we made the amended complaint and we brought it to the court's attention in our MSJ op, and then again after the ruling, we tried to get it right. And I do think it's an understandable mistake, and we're hoping that you'll send it back so that the judge, we can fix that issue and then the judge can consider the substantive issues. If I have any time at the end, and I'm sure I don't have any, but thank you very much. Thank you. We'll hear from the other side. In police court, Craig Anderson on behalf of Officers Haddon English of the Las Vegas Metropolitan Police Department. The plaintiff's appellate argument is that the district court abused its discretion by failing to grant Rule 17A3 relief. However, the plaintiff never ruled. Did the court ever rule on the 17A motion? I didn't file a 17A motion. The motion for summary judgment that we filed. Oh, I'm sorry. Let me tell you what's the argument. Okay. I misheard you. The argument is that Rule 17A3 was never requested below, and in fact when they were provided the opportunity in responding to our summary judgment, they took the position that we're standing on the pleadings. There is no defect here. So they're essentially criticizing. I thought they filed a Rule 17 motion afterwards. They didn't file a Rule 17 motion. They filed a Rule 15 motion, and that was after judgment had been entered. And so Rule 15 motions cannot be considered after the court has been divested of jurisdiction. There's never been a Rule 17 motion filed in this case. The subsequent motion to amend the complaint after judgment had been ordered was pursuant to Rule 15. And I would also like to point out that the petition to appoint Mr. Jones has been filed, but the order appointing him to this day is not filed. And it's exercised with the record 192 and 193. There is still no administrator appointed to this estate as we stand here today. What's lacking? Since the district court has obviously authorized it, they need to file the order, and then there's the purely ministerial act. Ministerial, then there's the time for it. They did file the petition. They forgot to file the order. Correct. And so technically it's a very technical argument that there is still no administrator appointed as of this date. And that has to be filed where? With the probate court? With the probate court. And that's probably as far as I dare go, because I'm not a probate lawyer. And so I couldn't speak with authority on that. But that would easily be a fix, right? Absolutely. And that was what our perception was when we filed our motion for summary judgment. It was a thorough motion for summary judgment at about 70 pages, with the majority focusing on the merits. I had about two pages in there on the standing issue, believing that Rule 17, a relief, would be requested. And as the law says, they're entitled to a reasonable time. They didn't request it. They said, no, we're right. They're wrong. We're fine. We're resting on our pleadings. And so what they really did was tie the hands of the district court. What they're saying, counsel, I'm a little puzzled, because you said that they, to this day, have never filed a motion under Rule 17. Yet the district court addressed it. So the district court's own motion? It was so spontaneous. The district court mentioned that the proper method would have been to raise a Rule 17 issue. Okay. And then he addressed that on the merits. He addressed it later. We addressed the Rule 17 on the merits because the district court addressed it on the merits. Or you're suggesting that there's a waiver because they've never filed a Rule 17 motion. The district court went straight to Rule 17 and addressed it on the merits. Shouldn't we address that? I think the plaintiffs have weighed that argument. It was not one they raised below. They raised it in their briefs, right? They did not raise it in the opposition to motions. Got it. But the district court did raise it and based its judgment in part on Rule 17. So there's no relief I'm going to give them under Rule 17. The district court did address it. Okay, though it was not raised. And they improperly briefed it in this court. They briefed the Rule 17 in this court. Right. Correct. Okay. So, yes, it may have been waived at some point, but the district court didn't raise its judgment on that and, in fact, addressed Rule 17. Correct? We reached Rule 17. Yes, you can. It's whether the court abuses discretion in denying Rule 17 relief that was not requested. So, absolutely, this court could have addressed it. And would you like me to? Why wasn't it an abuse of discretion? It was not an abuse of discretion because, as Judge Smith pointed out earlier, naming the correct party was not difficult. The Moreland case in NRS 41.1. Well, so what? I mean, that's not the standard. That was really an understandable mistake. You yourself said you're not a court rate lawyer. I mean, you know, they thought they had done what was necessary, and they made a mistake. Should a case like this involving a death of a party hinge on a mistake made by NRK? So that seems to suggest the opposite. Okay, so Rule 17, the interpreting of Rule 17 says that once the issue is raised, the party is entitled to a reasonable amount of time to correct. So that issue was raised in our summary judgment motion. In their opposition, where they had a reasonable time to correct it, they said, well, you're standing on the pleadings. There is no defect. And so, at that point, the reasonable time had run. Then after they got to court. And that's what the district court basis decision on? No, the district court basis decision. So you keep talking about things that are not the basis of the district court's ruling. We review the district court's ruling. So telling us that the district court could have done something else and there was another basis is not helpful. Okay, so what's particularly not helpful to your client? So what the district court found then was that determining the correct party was not difficult, that the plaintiffs never filed the proper paperwork during discovery, and that they never requested leave to amend. So the district court had three specific reasons why it was not granting the relief. Not difficult, paperwork not filed, and the relief was never requested. And those are sound grounds that, although you may disagree with it, it does not rise to a level of abusing the court's discretion. Because what the argument really is is they didn't ask for the relief. They didn't want the relief. Well, what are we to conclude? That there is some deliberate issue in the case? I'm sorry? What do we conclude from all this? That they deliberately abandoned the case? No, that there was no one withstanding to pursue the claims during the entire proceedings of the district court. I mean, can you conclude anything other than they sort of bumbled their way and just couldn't figure it out? Well, that would be a subjective understanding. Well, what do you mean, not understanding? Well, the understanding is they deliberately threw the case. No, no. It was briefed, and they read our arguments. They could have at that point said, they're right, we made a mistake, let us correct it. I guess what we're talking about is the question of whether or not a case like this is an understandable mistake. That's the issue, right? Yes, and what the district court said is that it's not an understandable mistake because determining the correct party is not difficult, citing to the Moreland case and then Nevada Revised Statute 41.100. And so that was the district court's. And so I guess it's your determination whether that's an abuse of discretion for the district court to conclude that that made an unreasonable mistake. But that mistake was also coupled with the fact that they never requested the relief. So it's kind of a totality of these factors as to why the district court concluded. As the district court said in the order, the plaintiffs continue to act as if no defect even exists. So is the district court at that point supposed to say, this is relief you haven't asked for, this is relief you said you don't want, but I'm going to still give it to you even though you don't want it. Is that an abuse of discretion not to do that? And personally, I thought this case, I thought that they would ask for the Rule 17 relief in their opposition and they would be on the merits. That's why the merits were braced so heavily. Because even if we go to the merits, as you were discussing under the 14th Amendment claim, before we even get to the 14th Amendment claim, they need to establish a 4th Amendment claim because of the lower standard, the reasonable standard, and whether the officers would have been protected by qualified immunity for both the seizure and the force that was used. And I think it's clear in this case that at a bare minimum, the officers in this case would be entitled to qualified immunity for their actions. This was a multiple tasing case that occurred during a time period when this court was addressing numerous tasing cases. None of them like this. All the tasing cases I've seen involved 5 or 10-second bursts. I've never seen a case where individuals were tased for hundreds of seconds or sometimes part of that period with multiple bursts. I mean, where do the officers get their training? This is absurd. Okay, well, I would refer you to the Marquez v. City of Phoenix case, which is a 2013 case with the circuit, where the deceived was tased 22 times. And a panel in the circuit found that not only did they not even address the clearly established issue, found that it was reasonable under the circumstances. Where the cases are at this point, the tasers, are whether this – The guy is down. I mean, he's not made any threatening words or gestures, as best we can tell. And he's down. And he's saying, I can't move. Okay. And they keep tasing him and tasing him. I'm sorry, Your Honor, I did not mean to interrupt you. Well, so then you have to go back. Is this standard procedure in Las Vegas? Well, I will tell you that it's no longer in policy because of the subsequent chaos decisions. But what – this is not part of the record, and I apologize. But what police officers were doing during this time is tasers were initially considered to be low-level force. Okay, initially. That has changed now that they're intermediate force. And there was a practice that was called cuffing under power. When you couldn't get an individual handcuffed, officers were trained to drive stunt. Not dark mode, not the paralyzation taser mode, but drive stunt where you're just pressing the taser as a pain compliance tool into the suspect until handcuffing was complete. It's called cuffing under power. So an officer would tase under power until a person was cuffed. And now because of the recent case law in the Mateos case, and so would Bryan, that's no longer policy. Bryan came out ten days before this decision. It was a dark mode case. But what Mateos and Bryan, what clearly established law they've made is that it is not permissible to tase an individual who is not resisting. So as a passive resistance tool. But when you get into the cases involving Marquez, and there's even a more recent one in this circuit in May of this year, which I probably should have supplemented the record on in Rule 20-K, Thomas versus Dillard, where the court found that tasing, the law is not necessarily established that when you're tasing a resisting individual. And when you say that Mr. Jones was not threatening, I would respectfully disagree. Officer hadn't really performed as an admirable police officer in getting up to the point where we're tasing. What changed the dynamic was you have the 6'230 pound Jones turning and confronting the 5'7", 170 pound Hatton. And the taser prongs are in the front. So Jones was clearly approaching and advancing on Hatton. So he may not be saying anything threatening, but he was acting threatening. And at that point it became a physical altercation with this rather small officer. So you have two or three, four officers on the scene all tasing while you're there. You have four officers that show up, you have Hatton alone during the majority of the tasing. Officer Fonbueno arrives and is using his baton to try to pry the arm out. Officer English, when he hears the statement, there's something in his hand from Officer Fonbueno, teases him once in the upper back with a tricep that has no effect. He then moves to the left tricep, and then that's when the handcuffing occurred. But all of this occurred in less than two minutes. It's certainly a dynamic situation where the officer's sole purpose was to get him into handcuffs. And we're looking at it now with the benefit of 20-20 hindsight. We know what happened. Obviously Officer Hatton was not aware that he was on these whole levels of cocaine and that this other stuff was going on. But if you look at the Marquez v. City of Phoenix case, and that was 2013, a panel in the circuit found that 22 tasings was not unreasonable and didn't even address the clearly established problem. And that case happened around the same time this occurred, which then would obviously imply that it was not clearly established that Officer Hatton, that multiple casings was per se unconstitutional at that time. But this was multiple tasers. This was continuous tasing. It was nine taser discharges for about a minute and a half, and I believe that the Marquez case was longer. And it was longer. And then you have a district court case that was deferred by the 9th Circuit in an unpublished opinion. Sanders v. Fresno, which involved a similar length of tasing as this case, where the court found that the law was not clearly established on this issue. So if you get into the merits of this case, qualified immunity would certainly apply to these officers in this circumstance. This circuit has still not rendered a decision on when it becomes unconstitutional to tase a resisting and fleeing suspect. Now, so what do we do with the battery claim? The state law battery claim, in Davis v. City of Las Vegas, a panel of this court addressed the battery claim in an excessive force case. What the panel said in that case is that officers are immune for their use of force unless it is attributable to bad faith. And in this case, this is under Nevada law, this was Davis v. City of Las Vegas interpreting NRS 41.6. When was it? It was in 2007 by Judge Reinhardt. Yeah, but I have a Nevada case, Huff v. North Las Vegas Police Department, which is right from the state of Nevada, and it says the level or degree of force an officer uses does not relate to the policy objectives and is not protected by discretionary immunity. Huff is an unpublished decision, and there are other unpublished decisions that say that it is covered. And so I went with Davis in this case because it is a published decision binding upon this court, because Huff is not a published opinion. But it is certainly discretionary as to what type of force you're going to use. Are you going to use a baton? Are you going to use a taser? Are you going to use pepper spray? That becomes an issue of discretion or your fists. So the officer is using his discretion, and so they can only be stripped of their discretionary immunity if there is bad faith or similar to Chuck's, the conscious, standard, and evil moment. I know I'm out of time. If you want me to address the 14th Amendment claim or... I think you're out of time. Okay. Thank you. Thank you very much, Your Honors. I think you're out of time. We'll give you a minute or so to buckle. It's just very brief. I'll make a few comments and then I'll answer any questions that you have. First of all, so that it's clear, and I think it is for the record, once the two probes are in, from the initial tasing, when you drive-stun the person in a third point in their body, there's an electrical circuit that goes throughout. So this really, for all intents and purposes, was getting the full circuitry through a darker probe mode. And agreeing with Judge Kaczynski, I mean, the amount of tasing, and I don't know if some of you have had a chance to listen or to see the video from the taser video, and not only the duration of it, but the length of the consecutive tasings really in this case is almost beyond belief. Counsel, with respect to the Rule 17 question, what is your response to the district court's finding that you have never requested leave to a man to cure this defect, and instead they, referring to the plaintiffs, act as if no defect exists? Well, I think... Did you ever ask the district court to correct a watch who understood that there was a mistake? Yes. And when did you ask for that? After the ruling. Well, what happened, and again, as I previously said, I wish that we would have done it during the pendency of the MSJ, but after the ruling came out... Then you went to the district court. But before the appeal is when we make the request. And did you admit that you had made a mistake? I don't have it in front of me, but I think it would be pretty clear either explicitly or implicitly that we got it wrong and that we wanted to get it right, because our concern at that time, and still our concern here as has been discussed, is we didn't want the case to be decided on this technicality, which we really, to this day, believe was an understandable mistake. So, unless you have any other questions, thank you all very much. Thank you. Case is argued. Steve Smith, lawyer general.
judges: Kozinski, Bybee, N.R. Smith